**UNITED STATES of America, Plaintiff,**

v.

**NEW ORLEANS PUBLIC SERVICE, INC., Defendant.**

Civ. A. No. 73–1297.

United States District Court, E. D. Louisiana.

Nov. 16, 1979.

David L. Rose, John M. Gadzichowski, Thomas P. Carney, Jr., Washington, D. C., Leonard P. Avery, New Orleans, La., for plaintiff.

Michael J. Molony, Jr., New Orleans, La., for defendant.

## OPINION

CASSIBRY, District Judge:

The Attorney General brought this action on May 17, 1973 on behalf of the United

States to require defendant New Orleans Public Service, Inc. ("NOPSI") to comply with Executive Order 11246, as amended (the "Order"), and the rules and regulations of the Secretary of Labor promulgated thereunder (41 C.F.R. §§ 60–1.1—60–741.54 (1978), hereafter "Rules and Regulations"). This Court issued its opinion including findings of fact and conclusions of law on November 13, 1974. I found, among other things, that:

(1) Executive Order 11246 has the force and effect of law;

(2) the Order requires that specified equal opportunity language be placed in each nonexempt government contract;

(3) the Executive Order authorizes the Secretary of Labor to adopt rules and regulations he deems necessary to effectuate the purposes of the Order;

(4) the Rules and Regulations require that the equal opportunity language be included in each nonexempt government contract whether or not physically incorporated in the contract or agreed upon by the parties;

(5) a contractor subject to Executive Order 11246 is subject to all of the rules and regulations issued that are not in conflict with the Order;

(6) the Rules and Regulations do not conflict with the Order;

(7) NOPSI is a nonexempt government contractor subject to Executive Order 11246, as amended; and

(8) NOPSI has violated the Order by refusing to comply with the Order and the Rules and Regulations.

*United States v. NOPSI*, No. 73–1297.

The judgment of the Court was affirmed on the merits by the United States Court of Appeals for the Fifth Circuit.[1] *United States v. NOPSI*, 553 F.2d 459 (5th Cir. 1977). The United States Supreme Court granted defendant's petition for writ of certiorari, vacated the judgment of the court of appeals, and remanded for further consideration in light of *Marshall v. Barlow's,*

*Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). *NOPSI v. United States,* 436 U.S. 942, 98 S.Ct. 2841, 56 L.Ed.2d 783 (1978). The Fifth Circuit subsequently vacated this court's judgment and remanded for consideration in light of the order of the Supreme Court. *United States v. NOPSI,* 577 F.2d 1030 (5th Cir. 1978).

After a conference, the parties submitted the matter on briefs without oral argument. The plaintiff submitted a brief in the form of a motion for the entry of judgment on remand, and the defendant filed a motion to dismiss and/or for judgment on the pleadings and/or for summary judgment. The plaintiff also filed a response to defendant's motion.

**1. Jurisdiction**

Defendant's first assertion is that this court is without subject matter jurisdiction, citing *Marshall v. Gibson's Products, Inc.,* 584 F.2d 668 (5th Cir. 1978). A motion to dismiss for lack of subject matter jurisdiction may be raised at any time by any interested party. *Burks v. Texas Co.,* 211 F.2d 443 (5th Cir. 1954). Nevertheless, defendant's assertion lacks merit.

The problem in *Gibson's Products* was that the Secretary of Labor had attempted to bring suit to enforce a provision of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 657(a) (1976). The court held that there was no statute which conferred authority upon the Secretary to bring suit in the United States district courts. In the instant case, the Attorney General has brought suit on behalf of the United States. Jurisdiction is predicated on 28 U.S.C. § 1345, which provides in pertinent part, "[T]he district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States . . . ." 28 U.S.C. § 1345 (1976). *Gibson's Products* itself specifically cites the rule that the Attorney General is the chief legal officer of the United States, authorized to bring suit on behalf of the United States. 584 F.2d at 676 n.11. Defendant's

1. The court of appeals modified the Court's judgment as to remedy.

motion to dismiss for lack of subject matter jurisdiction is therefore denied.

## 2. Scope of the Remand

Defendant next contends that since the order of the Fifth Circuit vacated the entire decision of the court, all issues are open to reconsideration on remand. The defendant's memorandum argues, "[I]t is incumbent upon this Court to review its *entire* decision in light of the mandates of the United States Supreme Court and the Fifth Circuit." (emphasis in original). I agree with defendant, but I would focus on a different portion of defendant's assertion: the duty of the court is "to review its entire decision *in light of the mandates of the United States Supreme Court and the Fifth Circuit.*" (emphasis added).

Both parties have cited the well-reasoned approach of the Court of Appeals for the Sixth Circuit in *Mefford v. Gardner,* 383 F.2d 748 (1967):

[O]n the remand of a case after appeal, it is the duty of the lower court . . . to comply with the mandate of the court and to obey the directions therein without variation and without departing from such directions . . . . . Moreover, if the cause is remanded with specific directions, further proceedings in the trial court . . . must be in substantial compliance with such directions; and if the cause is remanded for a specified purpose, any proceedings inconsistent therewith is error . . . . .

383 F.2d at 758.

The Supreme Court and the Fifth Circuit specifically remanded to this court for reconsideration in light of the recent case of *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). Thus, it is only with respect to that decision that I must reconsider the merits of the case.

Briefly, the *Barlow's* case considered the validity of warrantless searches of commercial premises pursuant to the Occupational Safety and Health Act of 1970 ("OSHA"). The court held that such warrantless searches violated the fourth amendment's ban against unreasonable searches and seizures. *See* U.S. Const. amend. IV. Although defendant in the instant case argued on its appeal to the Fifth Circuit that any inspection of its records conducted pursuant to the Rules and Regulations would violate the fourth amendment, such an argument was not initially presented to this court, nor would it affect the findings of fact and conclusions of law constituting the original opinion of this court.[2] I therefore reinstate my original opinion including findings of fact 1–37 and conclusions of law 1–33,[3] subject to the merits of defendant's fourth amendment claim.

## 3. The Impact of the Fourth Amendment on the Rules and Regulations

Sections 201 and 206(a) of the Order provide:

Sec. 201. The Secretary of Labor shall be responsible for the administration of Parts II and III of this Order and shall adopt such rules and regulations and issue such orders as he deems necessary and appropriate to achieve the purposes thereof.

. . . . .

**2.** Defendant's assertion that *Barlow's* affects the issue of NOPSI's consent to be bound by Executive Order 11246 and the Rules and Regulations lacks merit. *Barlow's* involved unreasonable searches and seizures, not contracts. Accordingly, the issue of consent to the search in *Barlow's* has no application to the issue of NOPSI's contractual consent in the instant case.

Defendant also argues that it cannot be required to adopt an affirmative action program and be exposed to possible reverse discrimination suits. I agree with plaintiff that since the issue of substantive compliance has been severed from the coverage issue, it is inappropriate to consider such an argument at this time. I note in passing, however, that the recent Supreme Court decision in *United Steelworkers of America v. Weber,* —— U.S. ——, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979) takes much of the force from defendant's argument.

**3.** The Court of Appeals modified my original opinion as to remedy; therefore conclusions of law 34 and 35 will remain vacated.

Sec. 206(a). The Secretary of Labor may investigate the employment practices of any Government contractor or subcontractor, or initiate such investigation by the appropriate contracting agency, to determine whether or not the contractual provisions specified in Section 202 of this Order have been violated. Such investigation shall be conducted in accordance with the procedures established by the Secretary of Labor . . . .

Exec. Order No. 11,246, 30 Fed. Reg. 12319 (1965).

Section 60–1.43 of the Rules and Regulations implements Sections 201 and 206(a) and requires that:

Each prime contractor and subcontractor shall permit access during normal business hours to its premises for the purpose of conducting on-site compliance reviews and inspecting and copying such books, records, accounts, and other material as may be relevant to the matter under investigation and pertinent to compliance with the Order, and the rules and regulations promulgated pursuant thereto by the agency, or the Director.

41 C.F.R. § 60–1.43 (1978). Although Section 206(a) authorizes the Secretary to conduct investigations, it is critical to recognize that in implementing the Order, Section 60–1.43 places upon the employer the duty to provide access to its premises. Neither Section 60–1.43, nor any other of the Rules and Regulations expressly gives the Director of the Office of Federal Contract Compliance Programs (the official and agency charged by the Secretary with administering the Order and the Rules and Regulations, see 41 C.F.R. § 60–1.2 (1978)) the authority to enter an employer's premises with or without a warrant in the face of an employer's refusal to comply with Section 60–1.43.

The Ninth Circuit Court of Appeals was confronted with a similar statute in *Midwest Growers Cooperative Corp. v. Kirkemo*, 533 F.2d 455 (9th Cir. 1976). Pursuant to federal law, certain agricultural cooperative associations are exempt from regulation by the Interstate Commerce Commission ("I.C.C."). See 49 U.S.C. § 303(b)(5) (1970). Another statute provides that the I.C.C. shall have access to inspect the books and records of associations claiming exemption under Section 303(b)(5). 49 U.S.C. § 320(g) (1976).[4]

Midwest Growers Cooperative Corporation ("Midwest"), an association claiming exemption under 49 U.S.C. § 303(b)(5), refused to allow the defendant Mr. Kirkemo, a transportation specialist for the I.C.C., access to its records to investigate complaints of violation of its exemption. After repeated refusals, on the basis of an application filed by a United States Attorney and inspector Kirkemo, a United States magistrate issued an ex parte administrative warrant to search Midwest's records and files. Midwest allowed the inspection to proceed (on threat of imprisonment of its employees) and brought an action in district court to enjoin violation of its rights under the fourth amendment. The district court found the warrant was not valid and held that plaintiff's fourth amendment rights had been violated by the search and seizure of its records.

On appeal from the district court's ruling, the Ninth Circuit first considered the validity of the warrant under its prior ruling in *I. C. C. v. Big Valley Growers Co-op*, 493 F.2d 888 (9th Cir. 1974). In *Big Valley*, the I.C.C. brought an action seeking injunctive relief to require an agricultural cooperative association to give the I.C.C. access to its accounts, books, and other records under 49 U.S.C. § 320(g). Although the relevant statute gives the I.C.C. authority to inspect the records, the statute does not provide a remedy in case the association denies access

---

4. The statute provides in pertinent part:

The Commission . . . shall, during normal business hours, have access to and authority, under its order, to inspect, examine, and copy any and all accounts, books, records, memorandums, correspondence, and other documents pertaining to motor vehicle transportation of a cooperative association . . . which is required to give notice to the Commission pursuant to the provisions of section 303(b)(5) of this title.

49 U.S.C. § 320(g) (1976).

to the I.C.C. The district court denied the I.C.C.'s motion for a preliminary injunction on the ground that 49 U.S.C. § 322(b), which provides for an injunctive remedy against motor carriers and brokers for violations of the Interstate Commerce Act, does not confer jurisdiction to grant injunctive relief against agricultural cooperative associations. The Ninth Circuit reversed. The court held that the gap in the statute was merely a legislative oversight. The court therefore used its equitable powers to provide that the same injunctive remedy mandated by Congress to be used against motor carriers and brokers for violations of the Interstate Commerce Act can be used against exempt agricultural associations.

The *Midwest Growers* court was asked to extend the *Big Valley* holding to validate the warrant procedure used by the I.C.C. to force access to Midwest's records. The Ninth Circuit stated that using an administrative search warrant to enforce the I.C.C.'s statutory right of inspection was a "radical departure" from the injunctive pro-

cedure established by Congress and applied to agricultural associations in *Big Valley*. *Midwest Growers*, 533 F.2d at 462. A warrant procedure, the court said, is vastly different from the injunctive procedure in that it would be issued ex parte, without prior notice to the carrier whose records are to be searched. *Id.*

The Ninth Circuit also rejected defendant's contention in *Midwest Growers* that the United States Supreme Court rulings in *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), and *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1969) provide a basis for the generalized use of search warrants by administrative agencies. The Court pointed out that in each of the statutes under attack in those cases and *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), Congress had expressly granted authority to enter premises in order to effect a search.[5] The Court

---

5. *Camara* involved a search pursuant to Section 503 of the Housing Code of the City of San Francisco, which provided:

> Authorized employees of the City departments or City agencies, so far as may be necessary for the performance of their duties, shall, upon presentation of their credentials, *have the right to enter*, at reasonable times, any building, structure, or premises in the City to perform any duty imposed upon them by the Municipal Code.

(emphasis added); *see* 387 U.S. at 526, 87 S.Ct. at 1729.

The inspection in *See* was conducted pursuant to Section 8.01.050 of the City of Seattle Fire Code, which provided:

> It shall be the duty of the Fire Chief to inspect *and he may enter* all buildings and premises, except the interiors of dwellings, as often as may be necessary for the purpose of ascertaining and causing to be corrected any conditions liable to cause fire . . . .

(emphasis added); *see* 387 U.S. at 541, 87 S.Ct. at 1738.

The forcible entry in *Colonnade Catering* was based on 26 U.S.C. § 5146(b) and 26 U.S.C. § 7606, which give broad authority to the Secretary of the Treasury or his delegate to enter and inspect premises of retail dealers in liquors. They provide:

> The Secretary or his delegate *may enter* during business hours the premises . . . of any dealer for the purpose of inspecting or examining any records or other documents

required to be kept by such dealer under this chapter . . . and any distilled spirits, wines, or beer kept or stored by such dealer on such premises.

26 U.S.C. § 5146(b) (1976) (emphasis added).

> (a) Entry by day
> The Secretary *may enter*, in the daytime, any building or place where any articles or objects subject to tax are made, produced, or kept, so far as it may be necessary for the purpose of examining said articles or objects.
> (b) Entry at night
> When such premises are open at night, the Secretary *may enter* them while so open, in the performance of his official duties.

26 U.S.C. § 7606 (1976) (emphasis added). *See* 397 U.S. at 73–74, 90 S.Ct. 774.

The search in *Biswell* was conducted under the ostensible authority of The Gun Control Act of 1968, 18 U.S.C. § 923, which provides:

> The Secretary *may enter* during business hours the premises . . . of any firearms or ammunition importer, manufacturer, dealer, or collector for the purpose of inspecting or examining (1) any records or documents required to be kept by such importer, manufacturer, dealer, or collector under the provisions of this chapter . . ., and (2) any firearms or ammunition kept or stored by such importer, manufacturer, dealer, or collector at such premises.

18 U.S.C. § 923(g) (1976) (emphasis added); *see* 406 U.S. at 310–11, 92 S.Ct. 1593.

concluded that an administrative search can be accomplished through a warrant of inspection only when the agency is granted such a right of entry by statute. While Section 320(g) provides that the I.C.C. should have access to the business records, Congress did not expressly grant authority to the I.C.C. to enter premises without consent.

The court in *Midwest Growers* reaffirmed its ruling in *Big Valley* that in order to enforce the statute, the I.C.C. must obtain an injunction requiring the non-consenting carrier to comply with the inspection order. *Accord, I. C. C. v. Beehive State Agricultural Cooperative, Inc.*, 575 F.2d 802 (10th Cir. 1978). The court also explicitly held that the injunction procedure does not violate the fourth amendment. The court reasoned that the fourth amendment standard of reasonableness is insured by conducting an adversary hearing before an injunction may be issued. 533 F.2d at 461.

The regulation in the instant case, Section 60–1.43, is virtually indistinguishable from the statute considered by the Ninth Circuit in *Midwest Growers*. It provides that an employer must provide access to its books and records but does not give the Director the expressed authority to enter without the employer's consent. Moreover, like the I.C.C. statute, the proper remedy for a violation of the statute is an injunction. The Rules and Regulations provide:

(1) Violations of the Order, equal opportunity clause, [or of] the regulations in this chapter, . . . may result in the institution of administrative or judicial enforcement proceedings to enforce the Order and to seek appropriate relief. Violations may be found based upon, inter alia, any of the following: . . . (v) a contractor's refusal to allow an on-site compliance review to be conducted; (vi) a contractor's refusal to supply records or other information as required by these regulations . . . .

(2) . . . [I]f the contractor refuses to . . . supply records or other requested information, or refuses to allow the compliance agency access to its premises for an on-site review; and if conciliation efforts under this chapter are unsuccessful, the compliance agency (with the prior approval of the Director) or OFCCP, notwithstanding the requirements of this chapter, may go directly to administrative enforcement proceedings to enjoin the violations, to seek appropriate relief, and to impose appropriate sanctions, or any of the above. . . . Whenever the Director has reason to believe that there is substantial or material violation of the contractual provisions of the Order or of the rules, regulations or orders issued pursuant thereto, he/she may refer the matter to the Solicitor of Labor to institute administrative enforcement proceedings as set forth in this section or refer the matter to the Department of Justice to enforce the contractual provisions of the Order, to seek injunctive relief . . . and to seek such additional relief . . . as may be appropriate. There are no procedural prerequisites to a referral to the Department of Justice by the Director, and such referrals may be accomplished without proceeding through the conciliation procedures in this chapter, and a referral may be made at any stage in the procedures under this chapter . . . .

41 C.F.R. § 60–1.26 (1978).

While the legislative intent was not expressed in the I.C.C. cases, making it necessary for the Ninth Circuit to infer that the injunctive remedy was intended, the Secretary in the instant case has specified the procedures to be followed when confronted with a violation of Section 60–1.43. Thus, there is even stronger reason here than in *Midwest Growers* to find that the intent was not to provide an additional right of entry to inspect. Without the right of entry, a warrantless search, or a search with a warrant of inspection, is not proper under the Rules and Regulations if an employer refuses voluntarily to provide access to its premises or its books and records.

■ A proceeding in a United States district court for injunction or an administrative hearing for injunction after conciliation has failed are the appropriate remedies under the Rules and Regulations. Following the Ninth Circuit's reasoning in *Midwest Growers*, neither procedure contravenes the fourth amendment's protection against unreasonable searches and seizures. The Rules and Regulations provide that the administrative procedure is conducted pursuant to notice, and the hearing incorporates substantially the same procedures as the Federal Rules of Civil Procedure. *See* 41 C.F.R. § 60–30.1—30.30 (1978). The requirement of an adversary hearing in both the district court and administrative settings before an injunction is issued ensures that the standard of reasonableness mandated by the fourth amendment is met.

■ Nor could it conceivably be otherwise. It has long been settled that when an administrative agency has been given power to subpoena corporate records, the subpoena does not violate the fourth amendment, as long as its scope is properly limited. *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *see FTC v. American Tobacco Co.*, 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696 (1924). In *Morton Salt*, the Federal Trade Commission ordered Morton Salt to produce records so that the FTC could monitor the company's compliance with a previous court of appeals order. The company argued, among other things, that to force it to comply with the FTC's order to produce documents would transgress the fourth amendment's protection against unreasonable searches and seizures. Justice Jackson, for the Court, said:

> It is unnecessary here to examine the question of whether a corporation is entitled to the protection of the Fourth Amendment. Although the "right to be let alone—the most comprehensive of rights and the right most valued by civilized men," Brandeis, J., dissenting in *Olmstead v. United States*, 277 U.S. 438,

> 471, 48 S.Ct. 564, 72 L.Ed. 944, at page 478 . . . is not confined literally to searches and seizures as such, but extends as well to the orderly taking under compulsion of process, neither incorporated nor unincorporated associations can plead an unqualified right to conduct their affairs in secret.

> While they may and should have protection from unlawful demands made in the name of public investigation, corporations can claim no equality with individuals in the enjoyment of a right to privacy. They are endowed with public attributes. They have a collective impact upon society, from which they derive the privilege of acting as artificial entities. The Federal Government allows them the privilege of engaging in interstate commerce. Favors from government often carry with them an enhanced measure of regulation. . . . [L]aw-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest.

> Of course a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power. But it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant. "The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable." *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 . . . .

*United States v. Morton Salt Co.*, 338 U.S. 632, 651–53, 70 S.Ct. 357, 368–369, 94 L.Ed. 401 (1950) (citations omitted).

■ Any subpoena relies ultimately on the power of a United States district court to issue an injunction compelling compliance with its terms. *See* 5 U.S.C. § 555(d) (1976). In fact, the court's review is a company's protection against an overbroad administrative order to inspect or search:

[W]hile the demand to inspect may be issued by the agency, in the form of an administrative subpoena, it may not be made and enforced by the inspector in the field, and the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply.

*See v. City of Seattle,* 387 U.S. at 544–45, 87 S.Ct. at 1740. Thus, if the underlying subpoena satisfies the fourth amendment standard, any injunction to enforce its terms must as well. In the case at bar, the Director and compliance agencies are not directly given subpoena or warrant power, they are merely given a right of access to inspect. Thus, any request for an injunction to enforce the right of access must be judged by the same standards of reasonableness as a subpoena or warrant to inspect. But NOPSI has not complained that any specific request for access is burdensome or overbroad. NOPSI complains that *any* order to compel access would transgress its fourth amendment protection. Such an assertion cannot be maintained under the foregoing precedents.

Since the Ninth Circuit's ruling in *Midwest Growers,* the Supreme Court decided *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) and *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). In both of those cases, like the other Supreme Court predecessors discussed in *Midwest Growers,* the statutes gave the inspecting agency the authority to search without a warrant.[6] Since my instruction on remand was to consider the case at bar in light of *Barlow's,* I will confine my attention to that decision.

*Barlow's* involved an attempted search under Section 8(a) of OSHA, which provides:

(a) In order to carry out the purposes of this chapter, the Secretary . . . is authorized—

(1) *to enter without delay* and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and

(2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee.

29 U.S.C. § 657(a) (1976) (emphasis added). An OSHA inspector entered the premises of Barlow's, Inc. to conduct a search of the working areas of the business for health and safety violations. The president and general manager of the company, Mr. Barlow, refused to allow the inspector admission without a warrant, invoking his rights under the fourth amendment.

Rather than attempting to force entry under Section 657(a), the Secretary of Labor sought and obtained an order from the United States District Court for the District of Idaho to admit the inspector.[7] The president again refused to admit the inspector and brought suit to enjoin the warrantless searches assertedly permitted by OSHA. A three-judge court held that the fourth amendment requires a warrant for such a search, held the statute unconstitutional, and issued an injunction against searches and inspections pursuant to the statute.

**6.** *Almeida-Sanchez* involved a search pursuant to a provision of the Immigration and Nationality Act, 8 U.S.C. § 1357(a)(3) which provides:

Any officer or employee of the [Immigration] Service authorized under regulations prescribed by the Attorney General shall have power *without warrant*—

(3) within a reasonable distance from any external boundary of the United States, to *board and search for aliens any vessel within the territorial waters* of the United States and any railway car, aircraft, conveyance, or vehicle . . . .

8 U.S.C. § 1357(a)(3) (1976) (emphasis added); *see* 413 U.S. at 268, 93 S.Ct. 2535.

**7.** See note 8 and accompanying text.

On appeal to the United States Supreme Court, the Secretary used Section 657(a) as the authority to conduct the search. That section specifically gives the Secretary the power to enter business premises. The Secretary argued that warrantless searches of the type contemplated by OSHA were reasonable under *Biswell* and *Colonnade Catering*. Those cases held that an exception to the warrant requirement may be recognized for "pervasively regulated business[es]," *Biswell*, 406 U.S. at 316, 92 S.Ct. 1593, or for "closely regulated" industries "long subject to close supervision and inspection," *Colonnade Catering*, 397 U.S. at 74, 77, 90 S.Ct. at 777. The Secretary did not rely on the rules and regulations promulgated pursuant to OSHA which, like the Rules and Regulations in the instant case, authorize the appropriate officials to obtain compulsory judicial process to enforce the provisions of the act. 29 C.F.R. § 1903.4 (1978).[8] Moreover, the Secretary expressly did not rely on the district court order to admit the inspector that was actually issued in the case. The Supreme Court stated:

> The injunction entered by the [three-judge court], however, should not be understood to forbid the Secretary from exercising the inspection authority conferred by § 8 pursuant to regulations and judicial process that satisfy the Fourth Amendment. The District Court did not address the issue whether the order for inspection that was issued in this case was the functional equivalent of a warrant, and the Secretary has limited his submission in this case to the constitutionality of a warrantless search of the Barlow establishment authorized by § 8(a). He has expressly declined to rely on 29 CFR § 1903.4 (1977) and upon the order obtained in this case. . . . Of course, if the process obtained here, or obtained in other cases under revised regulations, would satisfy the Fourth Amendment, there would be no occasion for enjoining the inspections authorized by § 8(a).

*Barlow's*, 436 U.S. at 325 n.23, 98 S.Ct. at 1827 n.23.

Thus, the Rules and Regulations in the instant case contemplate the type of administrative or judicial process which were not before the *Barlow's* Court. In fact, the Secretary urged in *Barlow's* that requiring a warrant for OSHA inspectors would, as a practical matter, strike down warrantless search provisions in other regulatory statutes. The Court replied, "The reasonableness of a warrantless search . . . will depend upon the specific enforcement needs and privacy guarantees of each statute. . . . Some statutes already envision resort to federal court enforcement when entry is refused, employing specific language in some cases and general language in others." 436 U.S. at 321, 98 S.Ct. at 1825 (footnotes omitted).

One of the statutes the *Barlow's* Court cited as an example of specific language envisioning resort to federal-court enforcement was a former provision of the Mine Safety Act. The Court quoted the Act as follows:

> The Federal Metal and Nonmetallic Mine Safety Act provides "Whenever an operator . . . refuses to permit the inspection of any mine which is subject to this chapter . . . a civil action for preventive relief, including an application for a permanent or temporary injunction,

---

8. The regulation provides:

Upon a refusal to permit a Compliance Safety and Health Officer, in the exercise of his official duties, to enter without delay and at reasonable times any place of employment or any place therein, to inspect, to review records, or to question any employer, owner, operator, agent, or employee, in accordance with § 1903.3 . . . . the Compliance Safety and Health Officer shall terminate the inspection or confine the inspection to other areas, conditions, structures, machines, appa-

ratus, devices, equipment, materials, records, or interviews concerning which no objection is raised. The Compliance Safety and Health Officer shall endeavor to ascertain the reason for such refusal and he shall immediately report the refusal and the reason therefor to the Area Director. The Area Director shall immediately consult with the Assistant Regional Director and the Regional Solicitor, who shall promptly take appropriate action, including compulsory process, if necessary. 29 C.F.R. § 1903.4 (1978).

restraining order or other order, may be instituted by the Secretary in the district court of the United States for the district . . . ." 30 U.S.C. § 733(a). "The Secretary may institute a civil action for relief, including a permanent or temporary injunction, restraining order, or any other appropriate order in the district court . . . whenever such operator or his agent . . . refuses to permit the inspection of the mine .. . .. Each court shall have jurisdiction to provide such relief as may be appropriate." 30 U.S.C. § 818.

436 U.S. at 321 n.18, 98 S.Ct. at 1825 n.18.

The quoted provisions of the Mine Safety Act compare closely with the Rules and Regulations in permitting a district court injunctive proceeding to enforce the Order. Thus, there is nothing in *Barlow's* to indicate *Midwest Growers* does not accurately reflect the law. If anything, the dicta in *Barlow's* supports the inference that obtaining a district court injunction requiring an employer to submit to inspection of its premises or records is acceptable under the fourth amendment. The administrative procedure should be treated no differently.[9]

 For all of these reasons, I find that Executive Order 11246, as amended, and the rules and regulations of the Secretary of Labor promulgated thereunder, specifically 41 C.F.R. §§ 60–1.26 and 60–1.43, do not violate the fourth amendment guarantee against unreasonable searches and seizures as interpreted by the Supreme Court in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).

By bringing its suit in this court for an injunction to compel NOPSI to comply with the Executive Order and the Rules and Regulations, the United States was comply-ing correctly with the regulation that provides that a district court proceeding for injunction may be brought without first attempting conciliation and administrative action. 41 C.F.R. § 60–1.26(a)(2) (1978). My original order in this case enjoined NOPSI from failing and refusing to comply with Executive Order 11246, as amended, and the rules and regulations issued pursuant thereto. *United States v. NOPSI*, No. 73–1297, slip op. at 44 (E.D. La. Nov. 13, 1974). Nevertheless, the Fifth Circuit, on its original hearing in this case, felt that an injunction is too harsh a remedy at this time. I therefore restate the order of the Fifth Circuit, and adopt it as part of my opinion as follows:

> [T]he appropriate government compliance agency—whether OFCC or GSA—may proceed by administrative action to obtain NOPSI's compliance with the Executive Order. . . . [O]ur decision contemplates good faith negotiations between the parties, and certain issues decided herein are precluded from further negotiation. The company cannot any longer dispute its coverage under the Executive Order, nor can the company attempt to nullify the effect of the Order's application by demanding limitation-of-scope language in any contract or proposed affirmative action program that would restrict the impact of the Order. Moreover, NOPSI has no valid fourth amendment objections to the Government's demands for access either to the company's facilities or to the company's books and records, nor can NOPSI further delay or resist compliance by insisting on merely technical or unnecessary procedural niceties.

9. It might be argued that the administrative procedure is not the type of impartial judicial review of the administrative agency's request for access contemplated by the Court in *See*. Nevertheless, failure to comply with any final administrative order carries with it sanctions within the power of the Secretary only—the immediate cancellation of the company's contracts and/or debarment of the company from further contracts. 41 C.F.R. § 60–30.30 (1978). The question has only peripheral relevance in the instant case, since we are here concerned with a suit brought for injunction in this court, a United States district court. The United States undoubtedly pursued this course since the government agencies contracting with NOPSI are forced to contract only with NOPSI due to its status as a publicly-regulated monopoly. Any order cancelling its contracts would only harm the government agencies, who have no real alternative in obtaining the services NOPSI provides.

The Government may proceed at once in enforcing the Executive Order by administrative action. The parties are advised that, having fashioned our relief on the assumption of NOPSI's good faith in complying with our decision herein, this court will look with disfavor on any future attempts to delay compliance.

*United States v. NOPSI,* 553 F.2d 459, 473–75 (5th Cir. 1977), *vacated and remanded,* 436 U.S. 942, 98 S.Ct. 2841, 56 L.Ed.2d 783 (1978).

Plaintiffs will draft an appropriate order consistent with this opinion.

ORDERED this 15th day of November, 1979.